UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 14-cr-00192 KJM CKD |
| Plaintiff, | ORDER |
| v. | |
| Donald Peel, | |
| Defendant. | |

Defendant Donald Peel, represented by counsel, moves for compassionate release and a reduction of his sentence to time served under 18 U.S.C. § 3582(c). Mr. Peel argues the coronavirus pandemic (COVID-19) poses an imminent threat to his health because he is 71 years old and suffering from chronic obstructive pulmonary disease (COPD), prostate cancer and hypertension, among other conditions. *See* Mot., ECF No. 250; Reply, ECF No. 263.[1] The governement does not contest plaintiff's health conditions place him at greater risk of developing severe COVID-19 or that inmates and staff at Federal Correctional Institution (FCI) Victorville, where Mr. Peel is housed, have contracted COVID-19. *See generally* Opp'n, ECF No. 261. The government opposes Mr. Peel's motion on the basis he has not demonstrated he is not a danger to
/////

---

[1] The court notes defendant filed Pro Se Filings, ECF Nos. 256 & 257, after counsel was appointed.

the community. *Id*. Having reviewed the parties' briefing, for the following reasons Mr. Peel's motion is **denied**.

## I.     BACKGROUND

On July 17, 2020, a grand jury returned a single-count indictment charging Mr. Peel with transportation of a minor to engage in prohibited sexual conduct in violation of 18 U.S.C. § 2423(a). Indictment, ECF No. 6. On November 18, 2014, following trial, the jury unanimously found Mr. Peel guilty of the offense charged in the indictment. Verdict, ECF No. 143. On July 31, 2015, the previously assigned district judge sentenced Mr. Peel to 210 months' imprisonment and a 240 month term of supervised release. *See* Judgment & Commitment, ECF No. 165.

Medical records indicate Mr. Peel is seventy one years of age and suffers from a number of health conditions, including hypertension, COPD, benign hypertrophy of prostate, chronic viral hepatitis C and malignant neoplasm of prostate. *See* Opp'n Ex. 2 (Medical Records) (sealed).[2] Additionally, the parties agree Mr. Peel was previously infected with COVID-19. On September 13, the Bureau of Prisons (BOP) Health Services documents defendant is a "confirmed case COVID-19 – Current" while also noting later on the same day defendant was retested with the result "Coronavirus COVID-19 test negative, []- Resolved"). *Id*. at 12.[3] Additionally, medical records note while defendant tested positive for COVID-19 he "feels completely fine, he has no cough, no shortness of breath and no other subjective COVID19 complaint." *Id*. at 3.

As noted, Mr. Peel is currently assigned to FCI Victorville, in California. Opp'n Ex. 1 (Public Inmate Data), ECF No. 261-1. His projected release date is May 9, 2029; he has completed 43.1 percent of his sentence of incarceration. *See id*. The government does not dispute that at FCI Victorville, at the time the government filed its opposition, there were 9

---

[2] The court grants the government's request to file this exhibit under seal to protect private medical information. *See Chester v. King*, No. 1:16-cv-01257, 2019 U.S. Dist. LEXIS 154413, at *5 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

[3] On September 23, 2020 medical notes appear to indicate "inmate is positive for COVID-19 for [second] week," Medical Records at 2, raising questions about the consistency of the records or the accuracy of testing.

inmates and 10 staff members positive for COVID-19.  *See* Opp'n at 5.  At the time this order is being issued, BOP shows numbers in the same general range, with 8 inmates and 6 staff members positive for COVID-19.  *See* BOP, *COVID-19 Cases* (updated daily).[4]  One inmate has died and 343 inmates and 18 staff members are listed as recovered.  *Id.*

Mr. Peel moves for compassionate release under 18 U.S.C. § 3582(c).  *See* Mot., ECF No. 250; Reply, ECF No. 263.  The government opposes his motion.  *See generally*, Opp'n, ECF No. 261.

## II.    LEGAL STANDARD

A sentencing court has authority to modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A).  Under that statute, as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), the court may grant a defendant's motion to reduce her term of imprisonment, provided the defendant has first satisfied an exhaustion requirement, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," if "extraordinary and compelling reasons warrant such a reduction," and if "a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

Many years ago, before the First Step Act and before defendants could move to reduce their sentences under § 3582, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" under § 3582.  *See* U.S.S.G. § 1B1.13. The same Guidelines section also "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community."  *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

Since the First Step Act was passed, district courts have disagreed about whether the Sentencing Commission's statement is binding.  Some courts have determined that the statement "no longer fits with the statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex.

---

[4] https://www.bop.gov/coronavirus/ (last accessed Nov. 18, 2020).

3

2019), because it does not account for a defendant's ability to move for compassionate release, *see United States v. Allen*, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019); *see also United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting "[i]n at least four judicial districts, courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release exist other than those delineated in U.S.S.G. § 1B1.13 n.1" (citations omitted)).  A strong contingent of decisions issued by district courts within the Ninth Circuit has indeed concluded that the Guidelines are no longer limiting and that the sentencing court has complete discretion to decide what counts as "extraordinary and compelling" reasons.  *See, e.g.*, *United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release."); *United States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *4–5 (N.D. Cal. March 31, 2020) (noting split in authority and following *Rodriguez*); *United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases finding U.S.S.G. § 1B1.13 is no longer limiting but considering the policy statement as guidance).

At the same time, many courts in this circuit still turn section 1B1.13 for "guidance on the 'extraordinary and compelling reasons' that may warrant a reduction in sentence." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 n.2 (D. Idaho Apr. 7, 2020) (quoting *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. March 31, 2020)); *see also Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of "extraordinary and compelling reasons" that warrant compassionate release under § 3582(c)(1)." (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010))), *appeal filed*, No. 20-

35334 (April 13, 2020).

This court has looked to the Sentencing Commission's policy statement as guidance in several previous orders and will do the same here, *see, e.g.*, *United States v. Schweder*, No. 11-00449-KJM, 2020 WL 5257598, at *3 (E.D. Cal. Sept. 3, 2020); the court need not decide whether that statement is binding.

### III. ANALYSIS

The parties do not dispute that Mr. Peel has exhausted his administrative remedies as required by § 3582(c). *See* Opp'n at 4, ECF No. 261.  The court thus considers (A) whether Peel has demonstrated that his motion is supported by extraordinary and compelling reasons and (B) whether applicable sentencing factors of § 3553(a) support his motion.

#### A. Extraordinary and Compelling Reasons

Many district courts, including this court, have found conditions at FCI Victorville present a high risk of coronavirus infection to inmates, regardless of whether there are current active cases. *See, e.g.*, *United States v. Terraciano*, No. 2:17-CR-00187-KJM-2, 2020 WL 5878284, at *3 (E.D. Cal. Oct. 2, 2020); *United States v. Rodriguez*, No. 3:17-CR-4477-BTM, 2020 WL 4592833, at *3 (S.D. Cal. Aug. 5, 2020) (finding prison environment at FCI Victorville heightens potential lethality of defendant's situation and substantially diminishes her ability to provide self-care); *United States v. Heffington*, No. 1:93-CR-05021-NONE, 2020 WL 4476485, at *7 (E.D. Cal. Aug. 4, 2020) (the fact "[i]n just 111 days the active COVID-19 virus cases at FCI Victorville went from 0 to 113" combined with defendant's age of 75 years and diagnoses of serious medical conditions constitutes "extraordinary and compelling reasons" for compassionate release); *United States v. Millage*, 464 F. Supp. 3d 1218 (D. Or.), *appeal dismissed*, 810 F. App'x 572 (9th Cir. 2020) (noting concern government did not disclose whether or to what extent FCI Victorville is testing symptomatic or asymptomatic inmates, both or neither).  On the record in this case at this time, the court concludes there is a high risk of infection at the Victorville facility and this factor weighs in favor of granting Mr. Peel's motion.

Factually the government does not challenge Mr. Peel's health conditions: hypertension, COPD, benign hypertrophy of prostate, chronic viral hepatitis C, and malignant neoplasm of

5

prostate; the government also does not disagree that these comorbidities provide "extraordinary and compelling" reasons sufficient to satisfy Section 1B1.13(1)(A) of the Sentencing Guidelines. *See* Opp'n at 10–12 (citing Centers for Disease Control and Prevention (CDC), *People Who are at Increased Risk for Severe Illness*[5] (recognizing COPD and hypertension as risk factors for COVID-19)); *see also* CDC, *Older Adults* [6] (explaining people in their 60s or 70s, generally at higher risk of severe illness than people in their 50s).

The government argues, however, even with his combination of health concerns and age, Mr. Peel has already shown he can recover from a COVID-19 infection without serious complications. *See* Opp'n at 10; Ex. 2 (Medical Records) (sealed).  Defendant counters Mr. Peel's advanced age distinguishes him from other cases cited by the government and heightens the dangers posed to him from a possible reinfection.  Reply at 3.  This court previously has considered whether having recovered from COVID-19 infection is a protective factor.  In *United States v. Fernandez*, No. 2:16-CR-00115-KJM, 2020 WL 5909490, at *4 (E.D. Cal. Oct. 6, 2020), it found given "the lack of scientific certainty regarding whether reinfection is possible after a purported recovery or negative test," defendant may still "show extraordinary and compelling reasons support his request for release based on his pre-existing conditions." (internal quotations omitted).  Additionally, while the CDC recently published a report that suggested "based on current evidence . . . reinfections are likely uncommon within 3 months," this observation is not conclusive regarding whether someone who has been infected is immune for any period of time, and does not support the conclusion that one achieves permanent immunity once infected. *See* CDC, *Updates to COVID-19 Immunity and Epidemiology to Inform Vaccine Policy*.[7]  The court sees no reason to revisit its previous conclusion on this record.

/////

---

[5] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (accessed Nov. 18, 2020).

[6] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (accessed Nov. 18, 2020).

[7] https://www.cdc.gov/vaccines/acip/meetings/downloads/slides-2020-10/COVID-Wallace.pdf (accessed Nov. 18, 2020).

Mr. Peel's health conditions increase the risk he would suffer a more severe case of COVID-19 if he contracted the virus again. Many district courts have found "extraordinary and compelling reasons" for granting compassionate release in cases with Mr. Peel's same comorbidities, including in decisions issuing from sister courts in this district. A summary of these decisions, organized by medical condition, is as follows:

- Hypertension, *see, e.g.*, *United States v. Richardson*, No. 17-00048, 2020 U.S. Dist. LEXIS 108043, at *8 (E.D. Cal. June 19, 2020) ("Defendant's hypertension alone places him at significant risk of complications."); *United States v. Sanders*, No. 19-20288, 2020 U.S. Dist. LEXIS 67595, at *10 (E.D. Mich. Apr. 17, 2020) ("Several courts . . . have identified hypertension as an underlying medical condition that renders a prisoner higher-risk, weighing against continued detention during the COVID-19 pandemic.");

- Hepatitis C, *see, e.g.*, *United States v. Ludwig*, No. 14-00043, 2020 U.S. Dist. LEXIS 140934, at *10 (E.D. Cal. Aug. 5, 2020) ("[D]istrict courts have found hepatitis B and C constitute medical conditions that increase the risk of severe illness from coronavirus warranting release, without necessarily clarifying whether the hepatitis is active, in remission or resolved.");

- COPD, *see, e.g.*, *United States v. McCarthy*, 453 F. Supp. 3d 520, 526–27 (D. Conn. 2020) ("Defendant has demonstrated extraordinary and compelling reasons justifying his release . . . [defendant] is 65 years old and suffers from COPD and . . . other lung-related ailments");

- Benign hypertrophy of prostate, *see, e.g.*, *United States v. Iezzi*, No. 2:17-CR-00157, 2020 WL 4726582, at *8 (W.D. Pa. Aug. 14, 2020) (defendant's multiple underlying medical conditions, including benign hypertrophy of prostate, "place him at higher risk for severe illness should he contract the COVID-19 virus");

/////

/////

/////

- Malignant neoplasm of prostate, *see, e.g.*, *United States v. Plunkett*, No. CR ELH-11-258, 2020 WL 5653258, at *7 (D. Md. Sept. 23, 2020) (granting compassionate release to defendant suffering from multiple conditions identified by CDC as risk factors, including malignant neoplasm and hypertension).

Taken together, the high risk of infection at FCI Victorville and Mr. Peel's health conditions provide extraordinary and compelling reasons to grant his request under § 3582(c).

**B.      Section 3553(a) Sentencing Factors**

The court thus considers whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," accepting this Guidelines statement as guidance. U.S.S.G. § 1B1.13.

Defendant's conviction reflects his commission of an extremely serious offense and warrants careful consideration in the dangerousness analysis. The victim testified at trial and in returning its verdict the jury had to have believed her testimony that she was sixteen years old when Peel introduced himself to her near the complex where she lived in Las Vegas, Nevada; he invited her to "hang out" and smoke methamphetamine and heroin regularly. Jury Trial Tr., 27:19–22, ECF No. 179; Presentence Investigation Report (PSR) ¶ 9, ECF No. 150. On or about March 18, 2014, defendant brought the victim into California twice. *See* Jury Trial Tr., 42:22–24, ECF No. 178. "From California they traveled up to Oregon and Washington and returned to California through Washington and Oregon." PSR ¶ 6; *see* Indictment at 1–2. Soon after he met her, Peel asked the victim to have sex with him and his girlfriend and offered her $100 to do so. PSR ¶ 10. She was high at the time and agreed; she never received $100. *Id.*

Additionally, defendant has an extensive criminal history. *Id.* at 32. The court first considers whether Peel has suffered prior convictions or engaged in behavior similar in nature to the current conviction offense. Twenty-eight years ago Mr. Peel was criminally charged for compelling two minor females, ages 14 and 16, to engage in prostitution. PSR ¶ 102. The case was terminated for unknown reasons, and does not count as a conviction. *Id.* Other prior convictions include battery, domestic violence and robbery, which suggest a violent prone history. *Id.* ¶¶ 39, 57, 89. Overall, defendant's history weighs against granting his motion.

8

While incarcerated Mr. Peel has incurred minor disciplinary penalties, with no incidents since May 2019. *See generally* Ex. F (Individualized Reentry Plan) (sealed), ECF No. 246-1. On March 24, 2016 he earned his GED. *Id.* at 569. From 2016 to 2018 he completed drug treatment programs. *Id.* at 570. As of February 7, 2020, he is "actively" participating in the Special Housing Unit educational programs, has completed four classes and is currently enrolled in one. *Id.* at 571.[8]

If he is released as requested, defendant proposes to reside with his sister in Kingman, Arizona. Release Plan 107, ECF No. 250; McLean Decl. 112, ECF No. 250. The court has conferred with the Probation Office that will be responsible for supervising Mr. Peel as a courtesy in the District of Arizona. That Office has reasonably determined Mr. Peel's release plan to reside in Kingman, Arizona is not acceptable; a number of factors informed this recommendation to the court, including the presence of disqualifying factors including a minor's residing in the home Peel proposes to live in, and the unavailability of adequate transportation to required sex offender treatment.

Upon evaluation of all the factors to be considered in imposing a sentence, 18 U.S.C. § 3553(a), this court finds concerns regarding dangerousness outweigh the other factors favoring the granting Mr. Peel's motion at this time. While it appears Mr. Peel would have a very difficult time overcoming dangerousness with any release plan, this conclusion does not preclude his renewing his motion if he believes he in fact can.

/////

/////

/////

/////

/////

---

[8] Defendant's current work assignment is "SHU UNASSG" with the description of this acronym as standing for "Unassigned SHU inmates." Individualized Reentry Plan at 569. It does not appear he is in the "SHU" for any disciplinary reasons.

9

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for compassionate release is **denied without prejudice**.

The government's request to seal Exhibit 2 of the Government's Opposition to Defendant's Motion for Compassionate Release is **granted.**

This order resolves ECF Nos. 250, 256, 257 & 262.

IT IS SO ORDERED.

DATED: November 20, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

10