# Exhibit 4

# DECLARATION[1]

I, DOUGLAS BEEVERS, declare as follows:

1. I am an Assistant Federal Defender (AFD) for the Eastern District of California (EDCA) in Sacramento, California. I have been employed as an AFD for approximately 20 years – from about 2001 to present. Specifically, I've been an AFD for 13 years in the EDCA, both in Sacramento and Fresno. Before that, I was an AFD in the Central District of Illinois (CDIL) for approximately four (4) years, and prior to that, I was an AFD in the District of the Virgin Islands for approximately three (3) years. Before working for the Office of the Federal Defender, I was also a public defender in Arizona practicing in state court for approximately three (3) years. I am familiar with the facts described below.

2. I was counsel of record for petitioner Donald Peel (Peel) from approximately July 8, 2014 (after his arrest on a federal arrest warrant) through approximately August 18, 2015. I was the assigned the duty attorney for my office, which is how I received Peel's case. The government indicted Mr. Peel on or about July 17, 2014. On August 7, 2014, I moved the court to suppress certain evidence and the court granted the motion, in part. I also got the original indictment dismissed, but the government re-filed the indictment at a later date. Mr. Peel's trial was in November 2014 and I was his trial defense attorney for the trial. As an assistant federal defender, I have handled sex related crimes prior to this case, mostly child pornography cases. In over 20 years of criminal defense practice, approximately four clients raised ineffective assistance of counsel against me. None of the claims was successful. In this case, I was relieved as counsel of record in August 2015 wherein the case was turned over to the appellate attorney, Mr. John Balazs, who was assigned to handle Mr. Peel's appeal. Mr. Balazs is a private defense attorney on contract with the court; Mr. Balazs works for defendants independent of the Office of the Federal Defender. On February 10, 2020, Peel filed an amended motion under 28 U.S.C. § 2255. ECF No. 214. Mr. Peel alleged several claims of ineffective assistance of counsel. Specifically, the allegations raised against counsel are grounds 1, 2, 4, 5-8, 11. *See* ECF 249. I address each one, in turn, below.

---

[1] This declaration is in addition to and/or complements/augments the approximate two hour recorded interview with the assigned AUSA (Mr. Peel was present by telephone from FCI Pekin). I requested Peel to be present for the recorded interview and I also permitted Mr. Peel to ask me questions during that interview.

1

3. Ground 1: Mr. Peel alleges that a) I did not investigate (pre-trial) LP's (victim) story about Mr. Peel threatening her on her way to the Weed Police Department. Additionally, Mr. Peel claims that b) I did not request a delay during the trial to investigate the victim's "surprise," changed testimony. Mr. Peel also claims that c) I did not, at trial, impeach the victim's testimony with her many inconsistencies and that I "suppressed" the victim's inconsistencies at trial (*See* ECF 214, p. 6 for specific allegations).

In response, the victim story's about the threats didn't appear in the recorded interviews so they couldn't have been investigated beforehand. She changed her story on the witness stand at trial. In my experience and judgment, the victim's story about Mr. Peel threatening her while he was handcuffed in the back of the Weed Police Department's patrol car was not credible – in fact, it could not have physically happened. I pointed out the ridiculousness of her testimony during cross-examination of the victim and that she just brought it up for the first time in trial. The police officers would not allow defendants in their patrol cars without being handcuffed so Mr. Peel could not have made the threats the way she described it while his hands were in handcuffs. Also, I chose strategically not to impeach her on this issue because 1) I did not want to give her a chance to change her story again, explain it away, or label it a mistake; and 2) I left the story as she described it (on direct and on cross) because her story was implausible and not believable. I cross-examined Officer Lazo regarding whether suspects were ever allowed to ride in the front of the police cruiser after being arrested and confirmed that such suspects would always be handcuffed. According to the officer's testimony, Weed Police allegedly has a policy which allows elderly suspects to be transported in the front seat if cuffed. I had expected the officer to testify to the clear impossibility of LP's testimony that she admitted she had never told anyone before the trial. However, on cross-examination, I introduced evidence of the existence of an alleged policy for elderly suspects sitting in the front seats that may have corroborated LP's testimony. This shows why I was reluctant to call witnesses for rebuttal whose responses are not 100% known.

I used my professional judgment related to the topics of cross-examination of the victim and all witnesses. I cross-examined the victim on her inconsistencies and lies related to dates of when events took place, where they took place, and what occurred. She even lied about her age on an application to buy a cell phone while they were in California because she needed to be 18 to buy it; likewise, she lied

2

to the police stating that she was 18 without Mr. Peel asking her to do so because she did not want to get into any more trouble, nor did she want her parents called. I also cross-examined her on motives and biases, and I explored the many contradictions in her testimony. In one critical area of examination, I noted that she originally was caught in possession of drugs, then tried to get out of it by accusing Mr. Peel of rape, then backed off that statement and said it was consensual sex. In stating that she had consensual sex with Mr. Peel, she "accidentally" accused him of statutory rape because she didn't know the age of consent was 18 in California. But then, her story changed again. Similarly, I attacked her credibility by pointing out her drug use and memory gaps, but I noted that she conceded that Mr. Peel was trying to help her get off heroin and that he was successful. I confronted her on the consensual nature of their relationship.

      Lastly, it was not necessary to ask for a delay mid-trial after the victim testified about Mr. Peel threatening her from the squad car because there was no need for cameras/surveillance footage as the victim's story was not credible and not physically plausible. Moreover, the footage was not likely to still be held at the Weed Police Department a year or so later anyway as it is my experience that film/footage are not kept for years. Lastly, based on my experience, it would not have shown footage of the moment described. In my professional judgment, I did not believe it was meritorious to request a stay to try to obtain the evidence if it even existed and I did not find it necessary as I readily handled the issue by pointing out the implausibility of the incident.

      4.      Ground 1 continued: Mr. Peel also claims that a) I did not present a defense[2] related to medical testimony, specifically, that I denied Peel a doctor who could contradict the victim's testimony that Peel could not ejaculate. I did not request a doctor to perform the exam because my many hours of medical research on the topic showed inconsistent results. Medical journals and articles explained that in certain circumstances, men can ejaculate, but in other circumstances, they can not. Moreover, Mr. Peel's long-term girlfriend, Nicole Gorski, agreed in pretrial interviews and testified that he could ejaculate and did in fact ejaculate during their relationship. This non-medical testimony was even more

---

[2] There may be a communication and vocabulary gap. Mr. Peel may understand "presenting a defense" in general to mean that the defense calls witnesses or present other evidence. Under the law, presenting evidence through the cross-examination of witnesses is part of "presenting a defense."

powerful because Ms. Gorski would have had sexual experiences with Peel in varying times, locations, and circumstances.  A medical professional would not have – the medical professional would have testified that men can ejaculate in some cases and not in other cases.  This would not have contradicted the victim's trial testimony that Mr. Peel did not or could not ejaculate especially considering the two had sexual intercourse in the vehicle and methamphetamine use may have been contemporaneous to the sexual activity.  I also did not expect the judge to admit this type of medical testimony, but that was beside the point.  Any medical testimony along this vein could have corroborated the testimony of the victim – that he could not ejaculate because the medical professional would have to have admitted that just because someone ejaculates in a medical office/room does not necessarily mean that the same person can ejaculate under a different circumstance.  The bottom line, in my opinion, was that such testimony was strategically not helpful.  Furthermore, I attempted, in cross-examination of the victim, to use any erectile dysfunction testimony to the defense's advantage by pointing out that sexual intercourse may not have occurred as she described it or did not occur in certain locations.

      Relatedly, Mr. Peel states that I did not "conduct an investigation of the witnesses and evidence," specifically, that I did not "interview witnesses from the defense's perspective."  In response, that is not accurate.  The defense team, which included the defense investigator, interviewed potential witnesses – family members of the victim, Nicole Gorski multiple times, and Peel's family in Washington State.  Witnesses that the defense wanted to testify were already available for trial –the government called them in their case-in-chief.  The crime scene was investigated and we interviewed personnel about that.  The police did not save relevant items from the hotel room to test for semen/DNA, so there was nothing to test or corroborate.  As part of our defense strategy, we discredited the police investigation as it was lacking and we impeached the personnel associated with the investigation.  It was Siskiyou County Public Defender that originally was assigned on the case, so naturally, there was a delay in what the federal investigators could do and what my office and investigator could do after the case was indicted federally.

    5.    Ground 2:  Mr. Peel states that a) I did not inform the court about Mr. Peel's request to represent himself pursuant to a *Faretta* request prior to empaneling a jury.  In response, prior to the submission of the motion in writing, Mr. Peel told me that he wanted to drop the *Faretta* request and

withdraw the motion. This conversation took place shortly before the trial – Mr. Peel no longer wanted to proceed *pro se*. I knew of case law related to *Faretta* and that Mr. Peel would have an absolute right to do that – it would have been automatic. As a defense attorney, I am sensitive to the issue and I wouldn't have gotten in his way. Peel had backed off the issue by the time trial started and by the time jury selection started. Mr. Peel didn't raise the *Faretta* motion in person while in court and that corroborated the fact that he did not want to continue with the motion. Mr. Peel also complains b) that I retrieved from the judge Mr. Peel's handwritten motion/letter to proceed *pro se* without prior consent from Mr. Peel and that Peel had never requested that the motion be returned to him/his counsel. In response, Mr. Peel wanted the motion withdrawn so I took it back from the judge. He gave me consent to do so because he chose not to go *pro se*. The judge's clerk mistakenly filed the letter and motion on the docket and it should not have been. I do not believe that I saw the motion before the judge handed the letter and motion back to me. I gave it to Mr. Peel right away. It was about 10-12 pages in length. I did not have time to read the whole motion right then, but I feared it being on the docket because of potential admissions contained in the motion. Mr. Peel asked later that it be filed and it was eventually filed. Peel objects in his § 2255 motion to the way I handled his *Faretta* request, but I handled it the way Peel communicated that he wanted it handled. I did not want the motion filed right then when I first received it from the judge because I was concerned the government may use statements in it against him. But, ultimately, it contained little evidentiary value. In protecting Mr. Peel, the November 3, 2014 motion was removed from the docket and replaced with a new filing date of November 12, 2014, near the end of trial and after I had a chance to fully review it for evidentiary value.

      6.      Ground 3: Peel claims that he is innocent of a federal crime due to the age of consent being 18 (federally) and in California. In response, Mr. Peel was convicted of 18 U.S.C. § 2423(a) wherein the jury found that he traveled with a minor, crossing several state lines, with the intent to have sexual intercourse with the minor and in fact had sexual intercourse with her during the trips. In any event, Ground 3 does not allege any ineffective assistance of counsel claim – it raises an actual innocence claim. He has always maintained his innocence and I find that claim credible. I argued that he did not have the intent to have sexual intercourse in California (age of consent was 18) when he crossed state lines. The jury rejected that argument.

5

7. Ground 4: Mr. Peel claims that his sentence was unfair due to his age and health and that a) I did not interview witnesses related thereto nor present mitigation evidence to the court on these issues including long-time drug use, work history,[3] or family history. In response, I challenged many issues at sentencing, for example, a vulnerable victim enhancement and the obstruction of justice enhancement. I put the crime in context in that I argued that she was a former prostitute who voluntarily got into this situation and Mr. Peel did not push her into this. I also argued that they were in a boyfriend/girlfriend relationship. In putting the crime in context, I demonstrated the lack of egregiousness based on the circumstances of the case and in comparison to other types of cases. In part, the defense strategy at sentencing was that they started their relationship in a legal way because Nevada had a younger age of consent when they first had sex. She was simply a girl who chose to go on a trip with him. I portrayed him as not being a pedophile, pointing out that he had a long-term relationship with an adult female, Nicole Gorski, and Gorski loved Peel. The victim wrote a letter to the court wherein she asked for probation, which corroborated our strategy. Also, I knew my audience – I had prior experience in front of the judge and knew that he was a) a guidelines type of judge (or near guidelines) and b) that he would not be persuaded by age, health, or prior drug addiction. In response to whether I interviewed mitigation witnesses – I talked to family members but they were relatives who did not know about his negative family characteristics. I explored other options for mitigation. So, in my professional estimation, I focused on the areas where I thought we had the best chance for a reduced sentence.

Mr. Peel also raises the issue that b) I did not argue to the court that there was no alcohol nor hard drugs used in the commission of these acts with the exception of the victim buying and using marijuana. In response, I did not argue this too strongly because there actually was evidence of hard drugs used. There was some evidence that Mr. Peel gave her methamphetamine to get her off heroin and the victim said it was effective. According to the victim, there were hard drugs used during the time of the relationship and during the sexual activity. Nevertheless, I pointed out the victim's contradictory testimony where she stated there were no drugs used. Still, I did not believe it would be helpful to

---

[3] I did in fact point out Mr. Peel's work history and the court noted it during the hearing.

highlight the topic of drugs – it would not be a helpful mitigating fact. I also provided to the court mitigation evidence in the form of a sentencing memorandum and objections to the PSR and I argued strongly at the sentencing hearing. *See* ECF 158, sentencing memorandum and ECF 164, J/S hearing minutes (and related transcript).

8. Ground 5: Mr. Peel claims that he has the right to honest representation and that I was not honest with him. He states that I asked him to lie on the stand - that he (Peel) had known the age of consent in California was 18. In response, I never told him to lie. I thought he had lived in California before; and, as such, I thought he was trying to hide that fact and that would have been a helpful fact. And, if he did know the age of consent in California, that would be good for him/us. From my perspective, Mr. Peel misperceived how I explained the issue to him. Mr. Peel states that I told the court in a pleading that there would evidence about Peel's knowledge of the age of consent in California. While I did file a pre-trial pleading in this regard just in case it was a fact he *could* testify to, it was not something the defense used at trial because Mr. Peel did not testify to this fact. The issue may have come out at trial anyway because the victim was told by the police that the age of consent in California was 18. It was important to get into evidence that 16 was the legal age of consent when the relationship started in Nevada, because I believed this would make his conduct more sympathetic to a California jury which might assume that such relationships are automatically immoral and illegal. This information partially came to light through the victim's and Gorski's testimony.

9. Ground 6: In a ground related to Ground 1 above, Mr. Peel reiterates that I did not use a doctor to examine him and subsequently testify on his behalf related to his ability to ejaculate in contradiction to the victim's testimony that he could not ejaculate. Mr. Peel also states that funding the examination was already approved by the Federal Defender's Office. In response, I do not believe we received formal approval for the funds, but the federal defender's budget was more than sufficient to have paid for a doctor to do the examination if it were necessary for the case. But, as stated above, I chose not to do this based on strategy decision. Peel also claims that I told him on October 10, 2014, during a court hearing, that I could not find a doctor to perform the exam. This may be his misunderstanding, because I did not look for a doctor specifically so that's not accurate. I had enough information from my own research to know that such medical testimony would have not helped his case.

1  In my research, I learned about the mechanics/science of ejaculation, delayed ejaculation, and the effects
2  of methamphetamine and other drugs on ejaculation.  Based on the medical research, there was no way a
3  medical profession would testify that just because men can ejaculate in a medical setting (or other
4  settings) means that men can ejaculate at all times in all situations because that is simply not accurate.
5  As often is the case – it depends on the man and the circumstances of the arousal.  So many factors can
6  affect ejaculation.  I believed that many men on the jury might not be aware of this medical fact I hoped
7  that such jurors might believe that LP was not telling the truth.

8       10.    Ground 7:  Mr. Peel claims that on direct appeal, appellate counsel raised ineffective
9  assistance of counsel claims against me and he hereby incorporates by reference in his amended § 2255
10 motion those same allegations.  In any event, the appeal was denied despite appellate counsel raising any
11 and all meritorious issues.

12      11.    Ground 8:  In a ground related to Ground 1 above, Mr. Peel reiterates his claim that I did
13 not investigate the victim's testimony about when/whether Mr. Peel threatened her while in transit to the
14 Weed Police Department; that b) I did not obtain surveillance from various locations to contradict the
15 victim's testimony; surveillance would not show the video c) I did not interview the police officers
16 related to the incident who could have purportedly contradicted the victim's testimony.  I answered this
17 above but to add to my answer:  I have a strategy when it comes to law enforcement.  They rarely, if
18 ever, provide defense with an interview so I often use Rule 17 subpoenas to ensure their presence at trial
19 if they are not on the government witness list.  Moreover, as I stated above, the victim's testimony was
20 not credible so I did not need additional officers to testify about it.  It is true that I did not inform the
21 court about the prosecution's email about the victim changing her testimony on the witness stand nor did
22 I accept the prosecution's offer to assist me in getting her back on the stand. (The government lawyers
23 were ethically and legally obligated to turn over that information pursuant to criminal discovery laws.) I
24 handled the issue using my best professional judgment.  She was fully impeached on the issue.  And, I
25 assumed the government, having control over her, would have prepared her accordingly.  So, I left it
26 alone as a strategy decision so she wouldn't have the opportunity to explain the inconsistency away.  I
27 spent a great deal of time cross-examining the victim.  And, in Mr. Peel's case, I sent out subpoenas, I
28 filed numerous motions, and I made many objections.  I was fully prepared for his trial and sentencing

8

1 and I zealously represented him.

2 12. Ground 9: Mr. Peel asserts that the trial judge mistreated him and that appellate counsel failed to raise this issue on appeal. This ground does not allege ineffective assistance of counsel against me.

3 13. Ground 10: Mr. Peel claims that there was an unconstitutional Nevada jury instruction (Jury instruction number 22) and that the instruction put Mr. Peel in a negative light and supported the government's case. I glean from the allegation that he complains that I did not object to the jury instruction. In response, I requested jury instructions that would be helpful, including a mistake of age instruction, but the judge denied the request. Instructions to the jury were the ones legally justified and raised by the evidence. The Nevada instruction was one I used but the government wanted additional statements of law that were correct and I did not object to their additions because they were correct on the law. I also suggested helpful clarifying edits to the instruction and the government did not object. I disagree with Peel that the instruction was unconstitutional.

14. Ground 11: Mr. Peel alleges that I did not move the court pretrial for access to the government's primary witness, namely the victim. In response, I didn't request this. The judge would not have allowed this without solid briefing and supporting facts for our request and we didn't have anything to argue. In addition, the victim had already changed her story many times. We knew a lot of information (bad facts) already about her, so a further interview would not have been fruitful. Mr. Peel also states that I did not inform the court about the victim being housed somewhere in California without permission to leave the premises. In response, first I didn't know where she was exactly or the circumstances of her housing; and second, we were not trying to get access to her pre-trial. If the government had done something to obstruct her testimony, then they would have had to turn that over to us pursuant to *Brady*. The victim testified at trial that she was free to leave and that she did not know if her father wanted her in the program. There is no evidence that forced detention happened, so this was a non-issue for the defense. I believe my investigator spoke to the victim's father and he was no opposed to her placement.

15. Ground 12: Peel alleges the same claim in ground 12 as he does in Grounds 1 and 8. Therefore, I refer back to my responses above.

9

declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 30th day of March 2021.

DOUGLAS BEEVERS
Assistant Federal Defender